OGDEN BROWER and Another, Doing Business under the Firm Name and Style of GIBBS-BROWER COMPANY, Respondents, *v.* KURT WANDEL, Appellant.

First Department, June 15, 1928.

*Emanuel Harris,* for the appellant.

*Chandler Bennitt* of counsel [*Goldmark, Bennitt & Colin,* attorneys], for the respondents.

FINCH, J. The plaintiffs have recovered a judgment upon a promissory note made by the defendant pursuant to a written agreement. The judgment must be reversed for the reason that the agreement is sufficiently ambiguous to have permitted proof upon the part of the defendant in support of the defense set up in the answer, that the note in suit should only be paid out of the proceeds of certain inventions. Further this defense sets forth that either through mutual mistake or fraud upon the part of the plaintiff, the written agreement failed clearly to set forth the true agreement of the parties. While defendant contends that according to the agreement the note was only to be paid out of the proceeds from a patented invention, the plaintiffs, on the

other hand, insist that the note was an absolute provision to pay and that there was given in addition a lien upon certain patents by way of collateral. The court at Trial Term excluded all testimony offered to explain the alleged ambiguity in the agreement upon the ground that the agreement was not ambiguous. The question presented, therefore, is whether the agreement is ambiguous so as to permit the introduction of evidence to show the real agreement of the parties. We are of the opinion that the agreement is ambiguous. In the 4th paragraph of the agreement the defendant gives a lien to the plaintiff " and promises to repay said obligation to the second party [plaintiffs] out of the proceeds of said invention." In the third " Whereas " clause of the agreement we find: "Whereas, the first party [defendant] has agreed to secure the second party against loss by reason of such claims, and has agreed to give his notes to the second party therefor." The first quoted portion of this agreement is susceptible of the construction that it limits the payment of the note to the proceeds of the invention, as well as to the construction that this paragraph is not by way of limitation but in addition to the giving of the note as an absolute obligation, to provide security therefor. Likewise, the third " Whereas " clause is susceptible of the construction that the note is only given by way of security to be paid in the event that sufficient was not realized out of the proceeds of the invention. It is likewise open to the construction that the note was given in absolute payment of the claims. It is true that there are also other portions of the agreement which support the plaintiffs' contention that the agreement may have been given in final settlement of the differences between the parties and that the note was an absolute promise to pay. Considering the agreement as a whole, however, it is impossible to say definitely what the parties to the agreement intended and there is, therefore, presented an issue between the parties as to what was the real agreement. Evidence dehors the written agreement, therefore, is permissible to show the real intention of the parties. Upon the trial the defendant testified that the plaintiffs had advanced him moneys from time to time in connection with the work of the defendant as an inventor for the Wortendyke Manufacturing Company. It was desired to secure the plaintiffs for the repayment of these amounts. The defendant testified: " Mr. Brower asked me to make provision for that. I told him I had no money to repay him any part of the advance on drawing account, and he suggested an agreement to bind me to pay this money out of the proceeds which I may still get — and which at that time there were still hopes of getting from the Wortendyke Manufacturing Company. It looked as though we might get

considerable money out of it. I told him I would be willing to make such an arrangement, and he called up his attorney, at that time Mr. Sanford, who came up to Mr. Brower's office almost at once and together with him we discussed this matter. Mr. Sanford said he would draw up an agreement and have it ready for me. On returning to the office he submitted an agreement which I think is part of this, as I recall it."

The defendant then sought to testify further with reference to what was said by Mr. Brower on behalf of the plaintiffs regarding the manner in which the note was to be paid. This testimony was excluded by the court. It should have been received, because, as noted above, the agreement expressly provides that the defendant " promises to repay said obligation to the second party out of the proceeds of said invention." Either, therefore, the agreement expressly limits payment of the note out of a particular fund, or there is an ambiguity in the instrument permitting of an explanation. As was said by Judge POTTER in *Springsteen* v. *Samson* (32 N. Y. 703): " * * * where the language is ambiguous or susceptible of more than one construction, or is vague or general, or inappropriate to express the true intent, extraneous evidence is admissible to explain, and an antecedent parol agreement may be received to point to the intent of the parties."

The judgment should, therefore, be reversed and a new trial granted, with costs to the appellant to abide the event.

DOWLING, P. J., MERRELL, McAVOY and O'MALLEY, JJ., concur.

Judgment reversed and a new trial ordered, with costs to the appellant to abide the event.